UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

| | |
|---|---|
| ANDRY DANIEL JACKSON RIZO,      )<br>                                                         )<br>                    Petitioner,         )<br>                                                         )<br>          v.                                           )         No. 2:26-cv-00026-JPH-MKK<br>                                                         )<br>BRISON SWEARINGEN,            )<br>FIELD OFFICE DIRECTOR, ICE )<br>Chicago Field Office,                    )<br>TODD M. LYONS,                      )<br>KRISTI NOEM,                            )<br>PAMELA JO BONDI,               )<br>                                                         )<br>                    Respondents.     ) | |

**ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS**

On January 14, 2026, Petitioner Andry Daniel Jackson Rizo filed a petition for writ of habeas corpus under 28 U.S.C. § 2241, challenging his civil detention in the Clay County Justice Center in Brazil, Indiana, and seeks immediate release from custody. Dkt. 1. For the reasons explained below, the Court grants the petition to the extent that no later than **5:00 p.m. on January 27, 2026**, Respondents must either: (1) afford Mr. Jackson Rizo an individualized bond hearing before an immigration judge pursuant to 8 U.S.C. § 1226(a) and its regulations; or (2) release Mr. Jackson Rizo from custody, under reasonable conditions of supervision.

**I.     Background**

Mr. Jackson Rizo is a native of Venezuela who entered the United States in 2021. Dkt. 1 at 6. He was detained, inspected, and then released on his own

1

recognizance.[1] Dkt. 1-5; dkt. 6-2 at 2. Mr. Jackson Rizo was detained again on December 11, 2025, by officers from U.S. Immigration and Customs Enforcement ("ICE") in Indianapolis, arrested pursuant to a warrant (I-200), and served with a Notice to Appear (I-862). Dkt. 6-2.

The Notice to Appear charges Mr. Jackson Rizo with inadmissibility under 8 U.S.C. § 1182(a)(6)(A)(i) as "an alien present in the United States without being admitted or paroled, or who arrived in the United States at any time or place other than as designated by the Attorney General" and 8 U.S.C. § 1182(a)(7)(A)9(i)(I) as "an immigrant who, at the time of application for admission, is not in possession of a valid unexpired immigrant visa, reentry permit, border crossing card, or other valid entry document required by the Act, and a valid unexpired passport, or other suitable travel document, or document of identity and nationality as required under the regulations." Dkt. 6-2 at 4. The "arriving alien" checkbox is unmarked. *Id.* at 2.

Mr. Jackson Rizo has not moved for or been given a custody re-determination hearing. Dkt. 12-2 at 2.

**II.    Discussion**

Mr. Jackson Rizo claims that his current detention violates the INA (Count I), the bond regulations (Count II), and the Due Process Clause of the Fifth

---

[1] Although Respondents state that Mr. Jackson Rizo was paroled into the United States in 2021, his Notice to Appear indicates that he was not paroled, and other documents in the record cited above indicate he was released on his own recognizance.

2

Amendment (Count III). Dkt. 1 at 12-15.[2] Respondents argue that Mr. Jackson Rizo's petition is premature; that he is lawfully detained under the INA pursuant to 8 U.S.C. § 1225(b)(2)(A); that, in the alternative, he is lawfully detained under the INA pursuant to 8 U.S.C. § 1226(a) because he will have the opportunity to receive a hearing; and that his detention is constitutional. Dkt. 6.

The Court finds that Mr. Jackson Rizo's detention is unlawful because Respondents are detaining him under § 1225 and have not given him a bond hearing as required under § 1226(a). Because Mr. Jackson Rizo is entitled to habeas corpus relief on these grounds, the Court does not address the constitutional arguments.

### A. Exhaustion

Respondents argue that Mr. Jackson Rizo's claims are premature because he has not moved for a bond hearing. Dkt. 6 at 6-7. Mr. Jackson Rizo argues that it is futile to attempt to exhaust his administrative remedies because the BIA has already directly addressed the issue of his statutory qualification for bond in *Matter of Yajure Hurtado*. Dkt. 12-2 at 1-4.

Respondents do not cite a statute requiring Mr. Jackson Rizo to request a bond hearing before seeking habeas relief. In the absence of a statutory mandate, the Seventh Circuit holds that "sound judicial discretion governs" whether courts should require exhaustion. *Gonzalez v. O'Connell*, 355 F.3d 1010, 1016 (7th Cir. 2004). In similar circumstances, other district courts determined that the

---

[2] Mr. Jackson Rizo's unopposed motion for leave to file his reply after the deadline set in the order to show cause, dkt. 12, is **granted**, so the Court considers the arguments and authorities set forth in the reply.

3

petitioner was not required to exhaust administrative remedies by seeking a bond hearing before an immigration judge because doing so would be futile given *Matter of Yajure Hurtado*'s holding. *Valencia v. Noem*, No. 25-CV-12829, 2025 WL 3042520, at *2 (N.D. Ill. Oct. 31, 2025) ("Requiring Petitioner to exhaust his administrative remedies would be futile because Respondents' position is that he is *statutorily precluded* from obtaining the relief he seeks. The Court declines to require exhaustion because [t]here is nothing to indicate the BIA would change its position [once] the BIA has predetermined the statutory issue.") (internal quotes and citations omitted); *see also Ceballos Ortiz v. Olson, et al.*, 2:25-cv-00548-MPB-MJD, dkt. 18 at 2-3, 6-9 (S.D. Ind. Nov. 19, 2025) (finding exhaustion would be futile, proceeding to merits, and ordering that petitioner be provided a bond hearing). The Court finds the reasoning applied in these cases persuasive and concludes that Mr. Jackson Rizo was not required to exhaust administrative remedies because doing so would be futile.

### B. 8 U.S.C. §§ 1226 and 1225

At issue here are 8 U.S.C. § 1226 and § 1225. While "§ 1226 applies to aliens already present in the United States," U.S. immigration law also "authorizes the Government to detain certain aliens seeking admission into the country under §§ 1225(b)(1) and (b)(2)." *Jennings v. Rodriguez*, 583 U.S. 281, 303 (2018). Section 1226 governs the "usual" removal process, which involves an evidentiary hearing before an IJ. *Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103, 108 (2020). Proceedings are initiated under 8 U.S.C. § 1229(a), also

4

known as "full removal," by filing a Notice to Appear with the Immigration Court. *Matter of E-R-M- & L-R-M-*, 25 I. & N. Dec. 520, 520 (BIA 2011).

> Section 1226(a) provides:
>
> On a warrant issued by the Attorney General, an alien may be arrested and detained pending a decision on whether the alien is to be removed from the United States .... [T]he Attorney General—
>
>> (1) may continue to detain the arrested alien; and
>>
>> (2) may release the alien on—
>>
>> (A) bond . . . ; or
>>
>> (B) conditional parole . . ..

8 U.S.C. § 1226(a). An immigration officer makes the initial determination to either detain or release the noncitizen. After that initial decision has been made, "[f]ederal regulations provide that aliens detained under § 1226(a) receive bond hearings at the outset of detention." *Jennings*, 583 U.S. at 306 (citing 8 C.F.R. § 236.1(d)(1)); *see also* 8 C.F.R. § 1236.1(c)(8). At that hearing, the noncitizen "may secure his release if he can convince the officer or immigration judge that he poses no flight risk and no danger to the community." *Nielsen v. Preap*, 586 U.S. 392, 397–98 (2019) (citing 8 C.F.R. §§ 1003.19(a), 1236.1(d)); *see also Hernandez v. Sessions*, 872 F.3d 976, 982 (9th Cir. 2017) ("[T]he burden is on the non-citizen to 'establish to the satisfaction of the Immigration Judge . . . that he or she does not present a danger to persons or property, is not a threat to the national security, and does not pose a risk of flight.'") (citing *In re Guerra*, 24 I. & N. Dec. 37, 38 (BIA 2006)).

Section 1225(b)(1) deals with "inspection of aliens arriving in the United States and certain other aliens who have not been admitted or paroled" and provides that immigration officers shall order certain noncitizens removed without further hearing or review unless the noncitizen indicates an intention to apply for asylum. § 1225(b)(1)(A)(i). This applies to noncitizens who have engaged in misrepresentation or have failed to meet document requirements under §§ 1182(a)(6)(C) or 1182(a)(7). *Id.*

Section 1225(b)(2) pertains to "[i]nspection of other aliens." Section 1225(b)(2)(A) provides that "in the case of an alien who is an *applicant for admission*, if the examining immigration officer determines that *an alien seeking admission* is *not clearly and beyond a doubt entitled to be admitted*, the alien shall be detained for a proceeding under section 1229a of this title." 8 U.S.C. § 1225(b)(2)(A) (emphasis added). An "applicant for admission" is "[a]n alien present in the United States who has not been admitted or who arrives in the United States (whether or not at a designated port of arrival . . .)." 8 U.S.C. § 1225(a)(1). In other words, noncitizens subject to 1225(b)(2) are not eligible for expedited removal but are subject to mandatory detention while their removal proceedings are pending.

**C. Mr. Jackson Rizo Is Eligible for a Bond Hearing Pursuant to 8 U.S.C. § 1226(a)**

Mr. Jackson Rizo argues that the statute's text, framework, and prior usage make it so that he can only be detained under § 1226(a). Respondents, on the other hand, argue that § 1225(b)(2)(A)'s text plainly refers to people in Mr. Jackson Rizo's position—unadmitted aliens. Considering the statute's text,

6

context, and history, Mr. Jackson Rizo's interpretation of the statute is more convincing.

### i. Statutory Text

Though Mr. Jackson Rizo disputes that he fits the description of an "applicant for admission," *see* dkt. 12 at 4, the definition provided in § 1225(a)(1) shows that he fits this description. There is no dispute that Mr. Jackson Rizo is an "alien" who is "present in the United States" who "has not been admitted." Also, because Mr. Jackson Rizo has been served with a Notice to Appear, it is evident that he is not "clearly and beyond a doubt entitled to be admitted." Nevertheless, Respondents do not explain how Mr. Jackson Rizo fits the third criteria in § 1225(b)(2)(A) of "seeking admission" into the United States other than to mention briefly that he has filed an application for asylum. *See* dkt. 6 at 9, 12.[3]

As the Seventh Circuit recently explained, "seeking admission" under § 1225(b)(2)(A) cannot be read as synonymous with "applicant for admission". *Castañon-Nava v. U.S. Dep't of Homeland Sec.*, 161 F.4th 1048, 1061 (7th Cir. 2025) (citing *United States ex rel. Polansky v. Exec. Health Res., Inc.*, 599 U.S. 419, 432 (2023)) ("[E]very clause and word of a statute should have meaning.")).[4]

---

[3] Respondents cite recent district court decisions finding that § 1225(b)(2)(A) applies to all unadmitted aliens because they are "applicants for admission", but do not explain whether Mr. Jackson Rizo fits the "seeking admission" criteria. *See* dkt. 6 at 9-10. And Mr. Jackson Rizo does not attempt to distinguish these cases and explain why they don't apply here.  Regardless, after reviewing these cases, none of which are binding, this Court finds that Mr. Jackson Rizo's interpretation of the statute's text, context, and history is more persuasive and applicable to the facts presented by his petition.

[4] The Court cites *Castañon-Nava* as persuasive precedent. *See Morales Perez v. Walsh*, 2026 WL 44777, at *2 (N.D. Ill. Jan. 7, 2026) ("[a]t a minimum, *Castañon-Nava* carries

7

"If an interpretation of one provision 'would render another provision superfluous, courts presume that interpretation is incorrect.'" *Id.* (quoting *Bilski v. Kappos*, 561 U.S. 593, 607–08, 130 (2010)). "[T]his presumption is 'strongest when an interpretation would render superfluous another part of the same statutory scheme,' as would be the case here." *Id.* (quoting *Marx v. Gen. Rev. Corp.*, 568 U.S. 371, 386 (2013)). Furthermore,

> it is Congress's prerogative to define a term however it wishes, and it has chosen to limit the definition of an "applicant for admission" to "an alien present in the United States who has not been admitted or who arrives in the United States." 8 U.S.C. § 1225(a)(1). It could easily have included noncitizens who are "seeking admission" within the definition but elected not to do so.

*Id.*

Next, Mr. Jackson Rizo's previous application for asylum does not bring him under the purview of "an alien seeking admission" in § 1225(b)(2)(A). Unlike "applicant for admission," "an alien seeking admission" is not defined within the statute. Therefore, in construing the statutory language, the Court gives the text its plain meaning. *See Encino Motorcars, LLC v. Navarro*, 584 U.S. 79, 85 (2018) (directing courts, in the absence of a statutory definition, to be guided by the plain meaning of the text). The plain meaning of "seeking admission" did not

---

substantial persuasive weight. It is true that *Castañon-Nava* cautioned that its decision was limited to 'the current record.' — F.4th —, 2025 WL 3552514, at *8. But the statutory-interpretation issue that the opinion resolved was one purely of *law*, and any adjustment to the *factual* record going forward would not likely alter the legal conclusion. In any event, as explained below, the Court agrees with *Castañon-Nava*'s holding on the legal question, so there is no need here to definitively decide whether it is binding precedent or something short of that.").

apply to Mr. Jackson Rizo when immigration authorities arrested him in December of 2025. *See Cazarez-Gonzales v. Olson*, No. 2:25-CV-590 (S.D. Ind. Dec. 5, 2025), dkt. 19 at 8 (collecting cases). While Mr. Jackson Rizo previously applied for asylum at some point, "seeking admission" is written in present-tense active language. *See United States v. Wilson*, 503 U.S. 329, 333 (1992) ("Congress' use of a verb tense is significant in construing statutes."). As this Court explained, "'seeking' means 'asking for' or 'trying to acquire or gain' and implies some kind of affirmative action on the part of the applicant." *Alejandro v. Olson*, 2025 WL 2896348, at *7 (S.D. Ind. Oct. 11, 2025); *see also Beltran Barrera v. Tindall*, 2025 WL 2690565, at *4 (W.D. Ky. Sept. 19, 2025) (rejecting the respondents' interpretation of section 1225(b)(2) to cover all aliens who are present without being admitted because "[t]he term 'seeking' 'implies action'" and "those who have been present in the country for years are not actively 'seeking admission.'"); *Rusu v. Noem*, 2025 WL 3240911, at *5 (N.D. Ill. Nov. 20, 2025) ("Noncitizens who are just 'present' in the country—who have been here for years and never proceeded to obtain any form of citizenship (e.g. asylum, permanent residency, refugee status, visas, etc.)—are not 'seeking' admission.").

    Mr. Jackson Rizo is plainly not "seeking admission." He was inspected and released in Arizona in 2021 and then arrested in Indiana four years later. If anything, Mr. Jackson Rizo's pending application demonstrates that he is "seeking to remain in the United States" not seeking admission. *Alejandro*, 2025 WL 2896348, at *7 ("[Petitioner] is not actively 'seeking' 'lawful entry' because he entered the United States over 20 years ago."). In sum, the fact that Mr. Jackson

Rizo is not "seeking admission" supports the conclusion that § 1225(b)(2)(a) does not apply to him.

### ii. Statutory Context and Framework

Respondents' interpretation of § 1225(b)(2)(A) does not make sense when read, as it must be, in the context of the rest of § 1225 and the INA's statutory framework. "[S]tatutory language cannot be construed in a vacuum. It is a fundamental canon of statutory construction that the words of a statute must be read in their context and with a view to their place in the overall statutory scheme." *Davis v. Michigan Dep't of Treasury*, 489 U.S. 803, 809 (1989); *see also King v. Burwell*, 576 U.S. 473, 486 (2015) (Our duty, after all, is "to construe statutes, not isolated provisions.") (internal quotation omitted).

Considering § 1225 as a whole, the most natural meaning is that it applies to "arriving" aliens attempting to enter the United States at a border or a designated port of entry. Section 1225 is titled: "Inspection by immigration officers; expedited removal of inadmissible arriving aliens; referral for hearing" and it repeatedly refers to "arriving" aliens throughout. *See* 8 U.S.C. § 1225(b)(1)(A)(i) (screenings for aliens "arriving in the United States"); *id.* § 1225(b)(2)(C) (aliens "arriving on land . . . from a foreign territory contiguous to the United States" may be returned to that territory pending removal proceedings); *id.* § 1225(d)(1) (immigration officers authorized to inspect "any vessel, aircraft, railway car, or other conveyance or vehicle in which they believe aliens are being brought into the United States"). The statute further explicitly carves out exceptions for "crewm[e]n" and "stowaway[s]" in § 1225(b)(2)(B), which

10

further demonstrates that § 1225 applies broadly to "arriving" noncitizens—not just § 1225(b)(1). In addition, its sister statute, 8 U.S.C. § 1225a, focuses on the pre-inspection of aliens entering the country at foreign airports.

As Respondents concede, § 1225 as a whole governs "inspection." Dkt. 8 at 8. Though not defined in the statute, regulations for "Inspection of Persons Applying for Admission" characterize inspection as occurring at or near the U.S.-Mexico or U.S. Canada border or a port of entry. *See* 8 C.F.R. § 235.1(f) *et seq.* (referring to aliens seeking admission at a "port-of-entry;" inspecting aliens who have been "brought to the United States . . . after having been interdicted in international or United States waters;" and repeatedly referring to "land border" and "land border port-of-entry" throughout). However, "[n]o inspection or screening takes place for a noncitizen residing in the United States who is subsequently detained because his or her parole has expired." *Walizada v. Trump,* 2025 WL 3551972, at *11 (D. Vt. Dec. 11, 2025). Indeed, Mr. Jackson Rizo's Notice to Appear indicates that he *was* inspected on September 23, 2021, when he "arrived in the United States at or near San Luis, AZ," though he was not admitted or paroled. *See* dkt. 6-2 at 2.

Respondents' interpretation also disregards the relationship between § 1225 and § 1226 within the INA. While § 1225 focuses on "inspection" of "arriving aliens," § 1226 pertains to the "[a]pprehension and detention of aliens." The plain language here suggests that § 1226—not § 1225—applies to Mr. Jackson Rizo because he is an "alien," who was "apprehended" and "detained" after a warrant was issued for his arrest. The fact that these two classes of noncitizens would be

11

treated differently makes sense within broader immigration law. As the Seventh Circuit explained, "the difference in treatment between a noncitizen at the border and one already in the United States fits within the broader context of our immigration law. Indeed, '[t]he distinction between an alien who has effected an entry into the United States and one who has never entered runs throughout immigration law.'" *Castañon-Nava*, 161 F.th at 1061 (quoting *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001)); *see also Leng May Ma v. Barber*, 357 U.S. 185, 187 (1958). ("[O]ur immigration laws have long made a distinction between those aliens who have come to our shores seeking admission ... and those who are within the United States after an entry, irrespective of its legality.").

Last, Respondents' interpretation of § 1225(b)(2) would make the recently enacted amendment to § 1226(c) superfluous. Congress passed the Laken Riley Act in 2025 to amend section 1226(c) and include more classes of aliens who are ineligible for bond under § 1226(a). Laken Riley Act, Pub. L. No. 119-1, sec. 236, § 2, 139 Stat. 3, 3 (2025). One of those new classes of aliens not eligible for a bond hearing are aliens not admitted into the United States who were charged with specific crimes. 8 U.S.C. § 1226(c)(1)(E) (citing *id.* § 1182(a)(6)(A)). Under the Respondents' expansive interpretation of § 1225, the amendment would have no purpose. Section 1225(b)(2) would already provide for mandatory detention of every unadmitted alien, regardless of whether the alien falls within one of the new classes of non-bondable aliens established by the Laken Riley Act. As seen above, courts construe statutes "so that effect is given to all its provisions, so that no part will be inoperative or superfluous, void or insignificant." *Corley v.*

12

*United States*, 556 U.S. 303, 314 (2009). Adopting Respondents' reading would render § 1226(c) completely unnecessary.

### iii. Prior Agency Usage

Respondents' argument also fails when considering the statute's prior usage and interpretation. After Congress passed the current detention framework as part of the Illegal Immigration Reform and Immigrant Responsibility Act ("IIRIRA"), the Executive Office for Immigration Review ("EOIR") drafted regulations explaining that, generally, people who entered the country without inspection are subject to detention under § 1226(a). *See* 62 Fed. Reg. 10312, 10323 (Mar. 6, 1997) ("Despite being applicants for admission, aliens who are present without having been admitted or paroled (formerly referred to as aliens who entered without inspection) will be eligible for bond and bond redetermination."). Indeed, until the recent policy shift in July of 2025, the government previously applied section 1226(a) to unadmitted noncitizens, such as Mr. Jackson Rizo, who were arrested in the interior of the country years after entering. *See Matter of Hurtado*, 29 I&N Dec. 216 n.6. ("We acknowledge that for years Immigration Judges have conducted [section 1226(a)] bond hearings for aliens who entered the United States without inspection.").[5] While an agency's interpretation of a statute is not dispositive, *see Loper Bright Enters. v. Raimondo*, 603 U.S. 369 (2024), the statute's prior usage and history may be considered along with the plain text of the statute, and the statutory context. Here, that

---

[5] As seen above, the record reflects that at some point Mr. Jackson Rizo was inspected, though he was not admitted or paroled. *See* dkt. 6-2 at 2.

13

weighs in favor of finding that § 1226(a), not § 1225(b)(2), applies to Mr. Jackson Rizo.

### D. Opportunity for Bond Hearing

In the alternative, Respondents argue that Mr. Jackson Rizo is being lawfully detained under § 1226a "because he will have the opportunity to receive a hearing before an Immigration Judge." Dkt. 6 at 13. Respondents therefore argue that this Court does not have jurisdiction over this matter due to § 1226(e), which states:

> The Attorney General's discretionary judgment regarding the application of this section shall not be subject to review. No court may set aside any action or decision by the Attorney General under this section regarding the detention of any alien or the revocation or denial of bond or parole.

*Id.* (quoting 8 U.S.C. § 1226(e)).

There is no evidence, however, that Mr. Jackson Rizo will have a bond hearing. In fact, Respondents contend that Mr. Jackson Rizo is ineligible for a bond hearing. Because an immigration judge has not "denied" or "revoked" bond, § 1226(e) does not have any bearing on this petition.

Mr. Jackson Rizo has not had an opportunity to meaningfully request and receive an individualized bond hearing. Thus, his detention pursuant to § 1226(a) is currently unlawful.

### III.   Scope of Relief

Mr. Jackson Rizo is entitled to habeas relief because his continued detention without a bond hearing violates ". . . the laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). The remaining question is the remedy, which should be "appropriate to the violation." *Waller v. Georgia*, 467 U.S. 39, 50

14

(1984). Mr. Jackson Rizo requests immediate release from custody. Dkt. 1 at 16. Immediate release is the customary remedy in habeas proceedings. *See Dep't of Homeland Security v. Thursaissigiam*, 591 U.S. 103, 107 (2020) ("Habeas has traditionally been a means to secure release from unlawful detention."); *Munaf v. Geren*, 553 U.S. 674, 698 (2008) (explaining that "the quintessential habeas remedy" is release from custody). However, the Court finds that it would not be in the interests of justice to order Mr. Jackson Rizo's immediate release and instead orders Respondents to provide him an individualized bond hearing as required by § 1226(a) and its regulations.

## IV. Conclusion

The Court grants the petition to the extent that no later than **5:00 p.m. on January 27, 2026**, Respondents must either: (1) provide Mr. Jackson Rizo with an individualized bond hearing before an immigration judge pursuant to 8 U.S.C. § 1226(a) and its regulations; or (2) release Mr. Jackson Rizo from custody, under reasonable conditions of supervision. No later than **12:00 p.m. on January 30, 2026**, Respondents must file documentation certifying that they have provided Mr. Jackson Rizo with a bond hearing, including apprising the Court of the results of the hearing. If Respondents release Mr. Jackson Rizo, then they must file documentation certifying his release. The **clerk is directed** to enter final judgment.

**SO ORDERED.**

Date: 1/23/2026

*James Patrick Hanlon*
James Patrick Hanlon
United States District Judge
Southern District of Indiana

Distribution:

All Electronically Registered Counsel